IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| USIC, LLC; USIC LOCATING SERVICES, LLC; and LOCATE HOLDINGS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> BRENT COFFIELD, TRAVIS DANIELS, BRIAN HANNA, ZACH MATNEY, ERIC MOODY, TOM ORTH, and CONSOLIDATED INFRASTRUCTURE GROUP, INC., <br><br> Defendants. | Case No. 1:16-CV-03285-TWP-MJD |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO TRANSFER**

### I.     INTRODUCTION[1]

After receiving harassing "cease-and-desist" letters and threats to "ruin" and "crush" certain Employee Defendants if they left USIC to work for CIG, the above-named Defendants in this action first filed a declaratory judgment action in the United States District Court for the District of Nebraska ("Nebraska Action") seeking declaratory and injunctive relief from Plaintiffs' anticompetitive and tortious conduct. The above-named Defendants also seek a determination in the Nebraska Action that the Defendants have not misappropriated trade secretes or violated any enforceable covenant. Three weeks after the Nebraska Action was filed, Plaintiffs filed this action, claiming that the Defendants allegedly misappropriated trade secrets and conspired to violate

---

[1] The defined terms in CIG's Brief in Support of Motion to Dismiss (Filing No. 6) are incorporated herein by this reference.

covenants contained in employment agreements signed by three of the Defendants (Daniels, Hanna and Moody).

Defendants CIG, Coffield, Matney and Orth moved to dismiss for lack of personal jurisdiction. Defendants Daniels, Hanna and Moody answered the Complaint, but move now to transfer this action to the District of Nebraska for consolidation with the Nebraska Action. All Defendants join in this Motion. For the reasons set forth herein, this matter should be transferred.

## II.  FACTUAL BACKGROUND

1  None of the Defendants reside in the State of Indiana. (*Id*.). Defendant CIG is a Delaware corporation which maintains its principal place of business in Omaha, Nebraska. (Filing No. 5-1 at ¶ 4). Defendants Daniels, Hanna and Matney reside in the State of Iowa. (Filing No. 19-2 at ¶ 2; Filing No. 19-3 at ¶ 2; Filing No. 19-5 at ¶ 2). Defendant Moody resides in the State of Nebraska. (Filing No. 19-6 at ¶ 2). Defendant Orth resides in the State of Florida. (Filing No. 19-7 ¶ 2). Defendant Coffield resides in the State of Missouri. (Filing No. 19-4 at ¶ 2).

2.  Defendants Daniels, Hanna and Moody (collectively, the "Signatory Defendants") signed a Protective Covenants Agreement during their employment with USIC which contained a forum-selection clause providing for exclusive venue in Marion County, Indiana. (Filing No. 19-2 at ¶ 8; Filing No. 19-3 at ¶ 9; Filing No. 19-6 at ¶ 7). Defendants CIG, Coffield, Orth, and Matney (collectively, the "Non-Signatory Defendants") however, did not sign a Protective Covenants Agreement and have not consented to jurisdiction in the State of Indiana. (Filing No. 5-2 ¶ 40).

3.  On October 14, 2016, USIC sent cease-and-desist letters to the Defendants alleging misappropriation of trade secrets and violation of restrictive covenants. The cease-and-desist letters threatened legal action unless Defendants returned a sworn "Confirmation/Agreement" to USIC's attorneys by October 19, 2016. (*Id*. at ¶ 44, Ex. A).

4832-5132-1152.2

4. USIC management also personally threatened Defendant Orth with litigation and told Defendant Daniels that he would be "crush[ed]" or "ruin[ed]" if he left USIC for CIG. (Filing Nos. 19-7 at ¶ 7; Filing No. 19-2 at ¶ 11).

5. In response to USIC's unfounded allegations and anticompetitive threats, Defendants filed a Complaint in the District Court for the District of Nebraska against Plaintiffs on October 19, 2016, in a matter styled *Consolidated Infrastructure Group, Inc. et al. v. USIC, LLC, et al.*, Case No. 8:16-cv-00472 (D. Neb. 2016) (hereinafter, the "Nebraska Action"). (Filing No. 5-2). The pending Nebraska Litigation is between the same parties and arises at least in part from the same facts and agreements at issue in the Indiana Action.[2] (Filing No. 5-2 at ¶¶ 1-12).

6. A copy of the Complaint filed in the Nebraska Action was transmitted to USIC's counsel by email and regular mail on October 19, 2016. (Exhibit 6[3]).

7. On November 9, 2016, three weeks after the Nebraska Litigation was filed, USIC commenced this action by filing suit in the Superior Court of Marion County, Indiana, in a matter styled *USIC, LLC, etal., v. Consolidated Infrastructure Group, Inc., et al*., Cause No. 49D01 16 11 PL 039993 (hereinafter "Indiana Action"). (Filing No. 5-3).

8. The USIC Complaint alleges that the Defendants misappropriated trade secrets and "acted in concert" and in a "conspiracy" to "unlawfully collect[] and distribute[] [USIC's] confidential, trade-secret information. . . ." (Filing No. 5-3 at ¶¶ 54-55).

9. On December 5, 2016, Defendants timely removed this action. (Filing No. 1).

---

[2] The Nebraska Litigation seeks a determination: (1) whether former Employee Defendants breach any contractual terms; (2) whether said agreements are enforceable; and (3) whether any former Employee Defendant misappropriated any trade secrets. In addition, the Nebraska Litigation seeks injunctive relief against USIC for tortious interference and unlawful antitrust and anti-competitive conduct. (*Compare* Filing No. 5-2 with Filing No. 5-3).

[3] Exhibits as referenced throughout are attached to Defendants' Appendix of Evidence in Support of Motion to Transfer Proceedings, filed contemporaneously herewith.

3

10. On December 9, 2016, CIG moved to dismiss for lack of personal jurisdiction. ([Filing No. 4](#)). The Non-Signatory Defendants also filed a Motion to Dismiss for lack of personal jurisdiction. ([Filing No. 8](#)).

### III.     STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought..." 28 U.S.C. § 1404(a). "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice." *Research Automation, Inc. v. Schrader-Bridgeport Intl, Inc.,* 626 F.3d 973, 978 (7th Cir. 2010). "The statute permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The party moving for the transfer bears "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

### IV.     ARGUMENT

**A.     This Action Could Have Been Brought In The District Of Nebraska**

This action could and should have been brought in the District of Nebraska. First, for the reasons set forth in Section IV(C)(1) below, venue is proper in the District of Nebraska pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims alleged in this action would have occurred in Omaha, Nebraska. Second, for the reasons articulated in Section IV(B) below, the claims asserted in this action are compulsory counterclaims. Plaintiff must therefore assert the claims asserted in this action in the Nebraska Action. The filing of this action was unnecessary and will result in duplicative claims being resolved in parallel actions.

Because this action could and should have been brought in the District of Nebraska, it may be properly transferred pursuant to 28 U.S.C. § 1404(a).

**B.     The Court Should Transfer This Action Pursuant to the First-Filed Rule**

As a general rule, a federal suit may be dismissed or transferred for reasons of wise judicial administration "whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Ridge Gold Standard Liquors v. Josepy E. Seagram & Sons, Inc*., 572 F.Supp. 1210, 1213 (N.D. Ill. 1983)). Pursuant to the so called "first-to-file" rule, courts should give preference to the first filed matter when presented with parallel litigation. *Sawyer v. Matthews*, No. 115CV01541SEBDML, 2016 WL 4440517, at *2 (S.D. Ind. July 29, 2016), *report and recommendation adopted*, No. 115CV01541SEBDML, 2016 WL 4429957 (S.D. Ind. Aug. 22, 2016) (citing *Research Automation*, 626 F.3d at 980). "Under that rule, the case with the earliest filing date is the one that serves as the vehicle for adjudicating the parties' dispute."). *Id.*

In *Research Automation*, the Seventh Circuit held "where a district court faces one of two identical lawsuits and one party moves to transfer to the other forum, the court should do no more than consider the order in which the suits were filed among the factors it evaluates under 28 U.S.C. § 1404(a)." *Research Automation*, 626 F.3d at 982. This District recently confirmed "*Research Automation* specifically states that when mirror-image lawsuits are pending in two different forums, a party may move to dismiss, transfer, or enjoin one of the lawsuits." *Hembree Consulting Servs., Inc. v. Mesa Underwriters Specialty Ins. Co.*, No. 115CV00686RLYMJD, 2016 WL 1253013, at *2 (S.D. Ind. Mar. 31, 2016) (quoting *Research Automation* 626 F.3d at 975). The Nebraska Action asserts both coercive claims for injunctive relief as well as claims for declaratory relief, but the first-filed rule applies with equal weight to declaratory judgment claims: "[T]he Seventh Circuit has never held that coercive actions automatically take precedence over

5

declaratory judgment actions. On the contrary, *Research Automation* . . . emphasizes that 'there is no precise rule for resolving the problem created by mirror-image lawsuits in two different federal courts[.]'" *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, No. 16 C 3401, 2016 WL 6248187, at *2 (N.D. Ill. Oct. 26, 2016) (citing R*esearch Automation*, 626 F.3d at 982).

At a minimum, the claims raised by Plaintiffs in this action are duplicative of and parallel to the claims raised by Defendants in the Nebraska Action to warrant application of the first-filed rule. Defendants filed a declaratory judgment action arising under the Defend Trade Secrets Act involving these same parties arising from the same agreements and circumstances in this action. ([Filing No. 5-2](#)). Defendants filed the Nebraska Action on October 19, 2016 and Plaintiffs filed this suit in response on November 9, 2016. (Filing Nos. 5-2 and 5-3). The fact that Plaintiffs assert nearly identical claims in this action, which Plaintiffs admit would give rise to a claim under the Defend Trade Secrets Act, demonstrates that Plaintiffs' misappropriation of trade secrets claim in this action are a "mirror image" of the claims currently pending in Nebraska arising under federal law. ([Filing No. 12 at 6-7](#)).

Moreover, USIC *must* assert these same claims in the Nebraska action because they constitute compulsory counterclaims. A compulsory counterclaim is "one that 'arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim.'" *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc.*, 653 F.3d 448, 470 (7th Cir. 2011) (quoting Fed. R. Civ. P. 13(a)); *see also St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 594 (8th Cir. 2001). To determine if a claim is compulsory, both the Seventh and Eighth Circuits evaluate the "logical relationship" between claim and counterclaim to determine whether the counterclaim is compulsory. *See Bd. of Regents of Univ. of Wis.*, 653 F.3d at 470; *Tullos v. Parks*, 915 F.2d 1192, 1194 (8th Cir. 1990). Generally, a counterclaim is compulsory if it speaks to the validity or

4832-5132-1152.2

essence of plaintiff's complaint. *See Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1085 (7th Cir. 1979), *cert. denied*, 444 U.S. 966, 100 (1979); *Gutreuter v. Fiber Bond Corp.*, 710 F. Supp. 227, 229 30 (N.D. Ill. 1989).

Here, there is a clear logical relationship between the claims in the Nebraska Action and Plaintiffs' claims in this action. Both involve identical parties, the same Protective Covenants Agreements, and both will involve questions of material fact regarding the alleged use and misappropriation of trade secrets by the Employee Defendants. (Filing Nos. 5-2 and 5-3). Transfer of Plaintiffs' Complaint is thus appropriate because USIC must assert its trade secrets claim in the Nebraska Action. If USIC does not assert a trade secrets counterclaim in the Nebraska Action, the judgment rendered in the Nebraska Action may preclude USIC from litigating its claim elsewhere. If USIC does assert a counterclaim in the Nebraska Action, the claim will mirror the claim asserted here and give rise to dual litigation of the same claim. Accordingly, the Court should grant Defendants' motion to transfer this action as it is duplicative of the Nebraska litigation.

C. **The Court Should Transfer This Action to the District of Nebraska Pursuant to 28 U.S.C. § 1404(a)**

In this District, a transfer of venue is appropriate if "venue and jurisdiction are proper in the transferee district, and . . . the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Bristol West Ins. Co. v. Clark,* 858 F. Supp. 2d 995, 1003 (S.D. Ind. 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Estate of Bussel*l, 939 F.Supp. 646, 651 (S.D. Ind. 1996)). The Seventh Circuit has stated that "[d]espite the existence of a valid forum-selection clause, courts may still transfer a case under § 1404(a)." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). A valid forum-selection clause may only waive a party's right to assert its own inconvenience as a reason to transfer or not transfer a case, because only one of 1404(a)'s factors—the convenience of the parties—is within the parties'

7

power to waive, and courts must still consider the interests of justice and the convenience of witnesses in determining whether transfer is warranted. *Id.* Finally, "where some but not all parties have entered into a forum selection clause . . . the district court must consider the private factors of the parties who have not signed a forum selection agreement as it would under a . . . section 1404 transfer analysis." *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014).

Only the Signatory Defendants in this action are subject to a forum-selection clause in the Protective Covenants Agreement. The remaining Non-Signatory Defendants and CIG are in no way bound by the forum selection clause in this case.[4] As to the Non-Signatory Defendants, the Court must apply a traditional analysis under Section 1404(a).

### 1. Venue Is Proper in the District of Nebraska

As a threshold matter, venue is proper in the United States District Court for the District of Nebraska. Venue is governed by 28 U.S.C. § 1391(b), which defines a proper venue as: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. *See* 28 U.S.C. § 1391(b). A corporation is deemed to reside in any district "in which it is subject to the court's personal jurisdiction" at the time the

---

[4] Plaintiffs cite the doctrine of "closely related" parties in arguing the forum-selection clause applies to *all* the Defendants in this action. (Filing No. 13 at 5-10). Plaintiffs are in error. This issue has been substantially briefed by the parties in connection with CIG and the Non-Signatory Defendants' respective motions to dismiss for lack of personal jurisdiction. (Filing No. 13 at 5-10; Filing No. 18 at 7-8; Filing No. 19 at 9-11). In the interest of brevity and avoiding repetitious argument, Defendants incorporate by reference their arguments against finding the doctrine of "closely related" parties applies to bind the Non-Signatory Defendants and CIG to the forum-selection clause in the Protective Covenants Agreements. (Filing No. 18 at 7-8; Filing No. 19 at 9-11).

4832-5132-1152.2

action is commenced. 28 U.S.C. § 1391(c). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws" and not on the existence of a forum-selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.,* 134 S. Ct. 568, 577 (2013).

In this case, venue is proper in the United States District Court for the District of Nebraska because CIG and Moody are residents of Nebraska. (Filing Nos. 19-7 and 5-1). Furthermore, a substantial part of the events giving rise to the claim occurred in Nebraska. Plaintiffs allege that the Employee Defendants have misappropriated trade secrets and breached non-competition clauses of certain Employee Defendants' Protective Covenant Agreements by working for CIG, a corporation with its principal place of business in Omaha, Nebraska. ([Filing No. 5-3](#)). The fact that the Protective Covenants Agreements signed by three Employee Defendants contains a forum-selection clause does not render the District of Nebraska an improper venue under *Atlantic Marine*. Accordingly, this action could have been brought in the District of Nebraska and venue is proper in the District of Nebraska.

### 2. Plaintiffs' Choice of Forum Is Entitled to Minimal Deference

Where, as here, "a plaintiff's choice of forum has little connection to relevant events, its choice is entitled to little deference." *Chicago, R.I. & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *see also Valbruna Stainless, Inc. v. ADT Sec. Servs., Inc*., No. 1:10-CV-00077-WCL, 2010 WL 2772324, at *2 (N.D. Ind. July 12, 2010) ("Where the chosen forum is not the situs of material events, however, or if another forum has a stronger relationship to the dispute, plaintiff's selection is entitled to less deference."); *CMG Worldwide, Inc.*, *v. Bradford Licensing Assocs*., No. 1:05-cv-00423-DFH-TAB, 2006 WL 3248423, at *4 (S.D. Ind. Mar. 23, 2006) (collecting cases) ("Where the plaintiff's choice of forum is not the situs of the material events, or

9

has a relatively weak connection to the events, plaintiff's chosen forum is entitled to less deference.")

In this case, Nebraska, not Indiana, is the situs of material events and bears the greatest relationship to the dispute. Defendant Moody signed his Protective Covenants Agreement in Omaha, Nebraska. (Filing No. 19-6 at ¶ 5). Defendants Hanna, Matney and Moody were either assigned territory in Nebraska or worked out of USIC's offices in Nebraska during their employment with USIC. (Filing No. 19-3; Filing No. 19-5; Filing No. 19-6). To the extent CIG alleges that the Employee Defendants have "conspired" with CIG—that alleged conduct also occurred in Nebraska. (Filing Nos. 5-3 at ¶¶ 54-55; Filing No. 5-1 at ¶ 18). *None* of the Employee Defendants worked in Indiana during their employment with USIC. (Filing Nos. 19-2 through 19-7). The only connection the state of Indiana has to this dispute is that it is the home office of Plaintiffs. Thus, Plaintiffs' choice of forum is entitled to minimal deference.

### 3. Convenience of the Parties and Witnesses Would Be Enhanced by Transfer

"With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc.*, 626 F.3d at 978. "Other related factors include the location of material events and the relative ease of access to sources of proof." *Id*.

### i. Convenience of witnesses

"Of the convenience factors—the access to witnesses factor—is 'often deemed the most important factor in the transfer balance' and is 'primarily concerned with the availability of non-party witnesses.'" *Advanced Turf Sols., Inc. v. Johns*, No. 116CV02769JMSMJD, 2016 WL 6996219, at *3 (S.D. Ind. Nov. 30, 2016) (quoting *Wabash Valley Feed & Grain, LLC v. Hust*, No. 3:11-CV-00014-SEB, 2011 WL 3902780, at *10 (S.D. Ind. Sept. 6, 2011)).

10

None of the Employee Defendants—who are also likely to be the most important and material witnesses in this case—are residents of Indiana.  (Filing Nos. 19-2 through 19-7). Defendants CIG and Moody are Nebraska residents.  (Filing Nos. 5-1 and 19-6).  Defendants Daniels, Hanna and Matney are residents of Iowa.  (Filing No. 19-2 at ¶ 2; Filing No. 19-3 at ¶ 2; Filing No. 19-5 at ¶ 2).  Daniels lives in Johnston, Iowa—approximately 140 miles from Omaha, Nebraska. (Filing No. 5-2 at 31; Exhibit 1).  Matney lives in Corning, Iowa—83 miles from Omaha, Nebraska.  (Filing No. 5-2 at 73, Exhibit 2).  These witnesses are substantially closer to the District of Nebraska than to the Southern District of Indiana.

Furthermore, any nonparty witnesses in this case are likely to be located closer to Nebraska than Indiana.  Plaintiffs allege Daniels "attempted to solicit USIC employees and customers from *his former geographical areas of oversight* as a USIC employee."   (Filing No. 5-3 at ¶ 24) (emphasis added).  Daniels was assigned territory in the state of Iowa and any non-party customers allegedly solicited would be located in the state of Iowa.  (Filing No. 19-2).  Plaintiffs further allege "[Coffield, Matney and Moody] also assisted and encouraged the other Defendants in soliciting USIC employees and customers." (Filing No. 5-3 at ¶ 26).  Defendants Matney and Moody were assigned to and worked out of USIC's offices in Omaha, Nebraska. (Filing Nos. 19-5 and 19-6).  Hanna was similarly assigned to and responsible for the Nebraska, Iowa and South Dakota sales territories. (Filing No. 19-3).  Indeed, *none* of the Former Employees were assigned territory in Indiana or worked in Indiana during their employment with Plaintiffs. (Filing Nos. 19-2 through 19-7).  Thus, any nonparty USIC customers (or former customers) allegedly solicited who may be material witnesses are far more likely to be located closer to the District of Nebraska and subject to its subpoena power.  For these reasons, the convenience and access of witnesses favors transfer.

4832-5132-1152.2

*ii.     Access to the forum*

CIG has no affiliation with the state of Indiana and it would similarly face substantial inconvenience to litigate a dispute in the Southern District of Indiana. (Filing No. 5-1 at ¶¶ 5-10). As stated above, the cost and expense of litigating a dispute in Indiana, particularly for the individual Employee Defendants, also favors transfer to the District of Nebraska. USIC, on the other hand, operates in 36 states throughout the country and has offices located in Nebraska. (Filing No. 18-2). The parties relative ease of access to the forum further supports transfer to the District of Nebraska.

**4.     The Interests of Justice Support Transfer**

"The interests of justice element includes factors such as docket congestion; familiarity with relevant law; the situs of material events; and the community's stake in resolving the controversy." *Advanced Turf Sols., Inc.*, 2016 WL 6996219, at *2 (citing *Research Automation*, 626 F.3d at 978). "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

*i.     Docket congestion*

The median time from filing to disposition in the District of Nebraska and the Southern District of Indiana is relatively comparable (8.7 versus 8.4 months, respectively, in civil cases). However, the number of pending cases per judgeship is significantly less in the District of Nebraska compared to the Southern District of Indiana (398 versus 819, respectively). (Exhibit 3). The Southern District of Indiana has also been designated a judicial emergency by the Judicial Conference. (*Id.*).

Furthermore, the Southern District of Indiana has observed "that where a case poses a difficult question of personal jurisdiction, 'transfer to a district with clear jurisdiction over the defendant conserves judicial resources and thus serves the interest of justice.'" *Advanced Turf*

12

*Sols., Inc.*, 2016 WL 6996219, at *4 (quoting *Dunlap v. Switchboard Apparatus, Inc.*, No. 1:12-CV-0020-TWP-DKL, 2012 WL 1712554, at *7 (S.D. Ind. May 15, 2012). Further, "transfer to a district with clear personal jurisdiction would only speed up that court's consideration of the merits." *Dunlap*, 2012 WL 1712554, at *7.

Presently pending are two separate motions to dismiss for lack of personal jurisdiction filed by Defendant CIG and Defendants Orth, Matney and Coffield.[5] (Filing Nos. 4 and 8). Here, transfer to the United States District Court for the District of Nebraska would speed up resolution on the merits. The factor of docket congestion clearly favors transfer to the District of Nebraska.

> ii. *Familiarity with relevant law and situs of material events*

At the outset, only three Employee Defendants (Moody, Hanna and Daniels) signed a Protective Covenants Agreement which contain the following language:

> The laws of the State of Indiana will control the interpretation and application of this Agreement, without regard to any conflicts of law principles of Indiana or any other state to the contrary. . . . .

Plaintiffs have alleged the Signatory Defendants breached their Protective Covenants Agreements by "misusing and misappropriating USIC's confidential and trade-secret information; soliciting USIC customers and employees in violation of their non-solicitation obligation; working at a "Competing Business" in violation of their non-compete obligations; and failing to give the required 30-day written notice of their upcoming departures from USIC." (Filing No. 5-3 at ¶

---

[5] USIC will no doubt point out it has similarly filed a motion to dismiss for lack of personal jurisdiction in the Nebraska Action. The speciousness of its motion is shown simply by the fact that USIC Locating Services, LLC, a subsidiary of USIC, consented to personal jurisdiction in the state of Nebraska by maintaining a registered agent in Nebraska. (Exhibit 5); *see also Perrigo Co. v. Merial Ltd.*, No. 8:14-CV-403, 2015 WL 1538088, at *7 (D. Neb. Apr. 7, 2015); *Knowlton v. Allied Van Lines, Inc*. 900 F.2d 1196, 1199 (8th Cir. 1990) ("One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State.").

13

68).[6] As to the remaining Defendants and causes of action, it will be necessary to analyze the Plaintiffs' claims under Indiana's choice-of-law principles.

Under Indiana's choice-of-law scheme, "the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply" in tort cases. *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). "This means that a court will usually apply 'the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong takes place.'" *Advanced Turf Sols., Inc.*, 2016 WL 6996219, at *5 (S.D. Ind. Nov. 30, 2016) (quoting *Simon*, 805 N.E.2d at 805 and discussing Indiana choice-of-law scheme as applied to cause of action under Indiana law for misappropriation of trade secrets in conducting transfer analysis). Indiana allows an exception only where the place of the tort is insignificant to the action. *Manson v. Keglovits*, 19 N.E.3d 823, 828 (Ind. Ct. App. 2014).

Here, the "last event" necessary to make CIG or any of the Former Employees liable for misappropriation of trade secrets could have occurred only in the District of Nebraska when the individual defendants allegedly disclosed trade secrets to CIG. Furthermore, Indiana has an insignificant relationship to the action. Indeed, Plaintiffs can only point to the location of its "servers" in Indiana as the basis for asserting personal jurisdiction over the Non-Signatory Defendants. (Filing No. 12 at 11-12). In any event, both Nebraska and Indiana have adopted the Uniform Trade Secrets Act, and the District of Nebraska is equally equipped to resolve these issues of law. *Compare* Neb. Rev. Stat. Ann. 87-502 *with* Ind. Code Ann. § 24-2-3-2.

---

[6] The remaining breach of contract claims against Defendants Daniels and Hanna arise under the Non-Qualified Stock Option Agreements which Plaintiffs' contend is "governed exclusively by Delaware law." (Filing No. 5-3 at ¶ 73). As both the Southern District of Indiana and the District of Nebraska stand on equal footing with respect to familiarity with Delaware law, these breach of contract claims bear little consideration either way in the transfer analysis.

Similarly, with respect to Plaintiffs' tortious interference claims, Nebraska law will apply. Plaintiffs' tortious interference claims are predicated on the breach of the Employee Defendants' respective agreements "by, among other things, soliciting Plaintiffs' customers and employees, and utilizing confidential information without authorization to benefit [CIG]." (Filing No. 5-3 at ¶ 80). The employment relationship between CIG and the Employee Defendants was entered into in the state of Nebraska, negotiations with CIG regarding employment took place in Nebraska, and none of the Employee Defendants worked for USIC in Indiana. (Filing No. 5-1). As between Indiana and Nebraska, Nebraska has the most intimate contact with the transaction and the majority of the parties. Even if Nebraska law does not apply to Plaintiffs' tortious interference claims, Nebraska and Indiana have adopted substantially similar elements to a cause of action for tortious interference there is no reason to believe the District of Nebraska cannot correctly apply Indiana law. *Compare Sheets v. Birky*, 54 N.E.3d 1064, 1072 (Ind. Ct. App. 2016) (defining elements of tortious interference with a contractual relationship under Indiana law as: (1) the existence of a valid and enforceable contract; (2) the defendants' knowledge of the existence of the contract; (3) the defendants' intentional inducement of breach of the contract; (4) the absence of justification; and (5) resultant damages); *with The Lamar Co., v. City of Fremont*, 771 N.W.2d 894, 905 (Neb. 2009) ("In order to establish a claim for tortious interference with a business relationship or expectancy, a claimant must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.").

Because the majority of material events giving rise to Plaintiffs' cause of action allegedly occurred in the state of Nebraska and the likelihood Nebraska law will apply to at least some of

4832-5132-1152.2

Plaintiffs' claims, the familiarity and situs of material events weigh in favor of transfer to the District of Nebraska.

### iii. *Community stake in resolving the controversy*

Finally, Nebraskans have an important stake in resolving this controversy. Moody is a Nebraska resident. ([Filing No. 19-6](#)). The majority of the Employee Defendants either worked in Nebraska or were assigned territory in Nebraska during their employment with USIC. ([Filing No. 19-7](#); [Filing No. 19-2](#); [Filing No. 19-3](#); [Filing No. 19-5](#)). Moreover, the actions of USIC in sending cease-and-desist letters to Employee Defendants and threatening to "ruin" and "crush" certain Employee Defendants who are now employed with a Nebraska corporation gives Nebraska jurors a direct interest in resolving this controversy. ([Filing No. 19-2](#)). Therefore, this factor is either neutral or slightly in favor of transfer to the District of Nebraska.

In considering the above factors, the Court should find convenience and the interests of justice support transfer to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a).

## V. CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court grant its motion to transfer and transfer this case to the United States District Court for the District of Nebraska.

DATED: January 28, 2017      Respectfully submitted,


     By */s/ Jonathan D. Mattingly*

     Jonathan D. Mattingly (Ind. No. 21011-41)
     MATTINGLY BURKE COHEN & BIEDERMAN LLP
     5255 Winthrop Ave., Suite 100
     Indianapolis, IN 46220
     Tel: (317) 614-7321
     Email:  Jonathan.mattingly@mbcblaw.com

     Michael S. Degan (Pro Hac Vice to be filed)
     KUTAK ROCK LLP
     1650 Farnam Street
     The Omaha Building
     Omaha, NE 68102-2186
     Tel: (402) 346-6000
     Fax: (402) 346-1148
     Email:  michael.degan@kutakrock.com

     *Attorneys for Defendant Consolidated Infrastructure Group, Inc., Brent Coffield, Travis Daniels, Brian Hanna, Zach Matney, Eric Moody, and Tom Orth*

4832-5132-1152.2

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 28, 2017, I electronically filed the foregoing with the United States District Court for the Southern District of Indiana, using the CM/ECF system, which will send notification of such filing to the following parties:

| | |
|---|---|
| Paul A. Wolfla, IN Bar #24709-49<br>Mark L. Shope, IN Bar #30850-49<br>FAEGRE BAKER DANIELS LLP<br>300 N. Meridian St., Suite 2700<br>Indianapolis, IN 46204<br>(317) 237-0300<br>Paul.Wolfla@FaegreBD.com<br>Mark.Shope@FaegreBD.com<br><br>*Attorneys for Plaintiffs* | David B. Helms<br>Benjamin D. Mooneyham<br>GERMAN MAY PC<br>1201 Walnut Street, 20th Floor<br>Kansas City, MO 64106<br>(816) 471-7700<br>DavidH@germanmay.com<br>BenM@germanmay.com<br><br>*Of Counsel for Plaintiffs* |

                        */s/ Jonathan D. Mattingly*
                        Jonathan D. Mattingly

4832-5132-1152.2